IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | No. CR-14-123-C |
| | ) | |
| PATRICIA CARTER, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
FOR HEARING ON WHETHER TO PROHIBIT TESTIMONY FROM
WITNESSES FROM WHOM RESTITUTION WAS NOT SOUGHT**

The United States respectfully requests that the Court deny Defendant Patricia Carter's Motion for Hearing on Whether To Prohibit Testimony From Witnesses From Whom Restitution Was Not Sought, in which Ms. Carter seeks a hearing to establish that the government violated the Anti-Gratuity Statute (18 U.S.C. § 201(c)(2)) by not seeking restitution in connection with guilty pleas for two witnesses who will testify at the trial of Ms. Carter and her co-defendant, Paula Kluding. (Doc. 41). Ms. Carter argues that because the government violated the Anti-Gratuity Statute, the testimony of these witnesses should be excluded. (*Id.*) The case law is clear that <u>even if</u> the government had promised the witnesses that it would not seek restitution in exchange for their testimony, there would be no violation of the Anti-Gratuity Statute. Moreover, the government's decision not to pursue restitution for these two witnesses was not an attempt to convey a benefit on them in exchange for testimony, but rather a function of

the charges to which the witnesses pled guilty, the practical impossibility of connecting their illegal conduct to a restitution amount, and the law applicable to restitution.

I.   **Background**

The government anticipates that it will call Michelle McGolden and Anita Hagerman to testify as witnesses at the trial of Ms. Carter and Ms. Kluding. Ms. McGolden and Ms. Hagerman have pled guilty to misdemeanor violations of 42 U.S.C. § 1320a-7b(a)(2)(ii) in Case Numbers CR-14-134-C and CR-135-C, which are also before this Court. Ms. McGolden and Ms. Hagerman entered into plea agreements with the government, each of which include standard language indicating that restitution will be ordered by the Court. However, as explained below, the government is not pursuing restitution against Ms. McGolden or Ms. Hagerman.

II.  **The Government's Decision Not To Pursue Restitution Against Ms. McGolden or Ms. Hagerman Does Not Violate The Anti-Gratuity Statute.**

Ms. Carter's description of Tenth Circuit precedent regarding the Anti-Gratuity Statute is accurate. The court has held that

> the defendant asserting a violation of 18 U.S.C. § 201(c)(2) must make a showing the government promised the witness "something of value" in exchange for the testimony, and that by making such a promise, the government stepped out of the shoes of the sovereign — i.e., the government made a promise of something of value not normally offered and this action was inconsistent with the role of the prosecutor.

*United States v. Jackson*, 213 F.3d 1269, 1289 (10th Cir. 2000). The *Jackson* court went on to hold that

> **[p]ayment for the services of a confidential informant is a long-established practice and cannot constitute a violation of the bribery statute even if the parties contemplated testimony by the paid informant.** *See United States v. Persico*, 832 F.2d 705, 717 (2d Cir.1987) (testimony of paid FBI informant was for the jury to evaluate, listing cases and quoting *United States v. Cervantes–Pacheco*, 826 F.2d 310 (5th Cir.1987) (en banc)), *cert. denied*, 484 U.S. 1026, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988); *United States v. Jones*, 575 F.2d 81, 85–86 (6th Cir. 1978) (holding it is not necessary to exclude the testimony of an informant paid for information leading to a conviction under a contingency fee arrangement). Consequently, Ms. Jackson has failed to show even a debatable violation of 18 U.S.C. § 201(c)(2). Because we have concluded [the defendant] failed to show [the witness] was paid in exchange for her testimony, we need not decide whether paying a witness for her testimony at trial is an act which brings the prosecutor outside of the role of the sovereign, thus making him or her subject to § 201(c)(2). We do note, however, that in order to make a *prima facie* showing of a violation of the bribery statute by the government, the defendant must do more than simply insist the exchange was not one traditionally extended by the government, as did [the defendant] in this case.

*Id*. (emphasis added).  The holding of *Jackson* is consistent with the holdings of numerous other Circuits.  The Ninth Circuit has held that

> [t]his circuit has not explicitly ruled that § 201(c)(2) does not apply to the government, **but has never found an instance where the government has violated the statute by offering leniency or payments to a witness.** *See United States v. Smith*, 196 F.3d 1034 (9th Cir. 1999) (holding that granting immunity in exchange for witness' testimony was not a violation of § 201(c)(2)); *United States v. Mattarolo*, 191 F.3d 1082, 1089 (9th Cir. 1999) (finding that the government's promise of leniency to a cooperating witness did not violate § 201(c)(2)). **This circuit has gone further and has upheld a contingency fee agreement between the government and an informant, based on the amount of money seized in undercover operations and the outcome of the trial.** *See United States v. Cuellar*, 96 F.3d 1179, 1183 (9th Cir. 1996) (payment of $580,000 to an informant did not violate the defendant's due process rights or constitute outrageous

government conduct). The court in *Cuellar* reasoned that the traditional safeguards of rigorous cross-examination and instructions to the jury regarding witness credibility were in place and that no violation occurred.

*United States v. Tsai*, 14 Fed.Appx. 834, 836 (9th Cir. 2001) (emphasis added). Particularly relevant to Ms. Carter's argument, the *Tsai* court further held that "[e]ven if it were the case that the government paid [a witness] $19,000 for his testimony **or that a benefit was conferred upon [the witness] in the form of a lower restitution limit**, this would still not qualify as a violation of § 201(c)(2)." *Id.* (emphasis added).

The Ninth Circuit further analyzed this issue in *United States v. Ihnatenko*, 482 F.3d 1097, 1099-1101 (9th Cir. 2007), with regard to a witness named Franco, as follows:

> Franco received three types of benefits in exchange for his agreement to testify on behalf of the government. These benefits include: (1) cash payments to housing providers and to him and his family in excess of $200,000 over a fifteen-month period; (2) promises not to prosecute him or his daughter for any drug crimes; and (3) provision of resident alien cards allowing Franco and his family to live and work in this country. We have previously held that § 201(c)(2) does not prohibit the government from providing immigration benefits or immunity from prosecution to a cooperating witness.
>
> Thus, the only issue we must decide is whether the government's provision of cash benefits or government-paid housing to a cooperating witness violates § 201(c)(2) and warrants a new trial. Appellants face a high hurdle in pressing an argument that has been rejected by every other circuit to have considered it. *See United States v. Mojica-Baez*, 229 F.3d 292, 301-02 (1st Cir. 2000); *United States v. Febus*, 218 F.3d 784, 796 (7th Cir. 2000); *United States v. Harris*, 210 F.3d 165, 167 (3d Cir. 2000); *United States v. Anty*, 203 F.3d 305, 311 (4th Cir. 2000); *United States v. Barnett*, 197 F.3d 138, 144-45 (5th Cir. 1999); *United States v. Albanese*, 195 F.3d 389, 394-95 (8th Cir. 1999); *United States v. Harris*, 193 F.3d 957, 958 (8th Cir. 1999).
>
> . . .

> **We today join our sister circuits and hold that 18 U.S.C. § 201(c)(2) does not prohibit the government from paying fees, housing, expenses, and cash rewards to any cooperating witness, so long as the payment does not recompense any corruption of the truth of testimony.** *See Smith*, 196 F.3d at 1039 n. 5 (noting that "18 U.S.C. § 201(c)(2) might apply to a way-ward prosecutor who bribes a witness to lie on the stand"). In reaching this conclusion we stress, as did the Third and Fourth Circuits, that "'a defendant's right to be apprised of the government's compensation arrangement with the witness, and to inquire about it on cross-examination, must be vigorously protected.'" *Harris*, 210 F.3d at 167 (quoting *Anty*, 203 F.3d at 312 (internal citations omitted)). The district court did so here, and Franco was exhaustively cross-examined on these benefits by eight defense lawyers in their efforts to discredit him.

*Id.* (emphasis added). *See also United States v. Mojica-Baez*, 229 F.3d 292 (1st Cir. 2000) (holding that statute which prohibits offering "anything of value" as an inducement to a witness was not violated when two prosecution witnesses received a reduced sentence and a cash stipend respectively); *United States v. Harris*, 210 F.3d 165 (3rd Cir. 2000) (holding that the government does not violate the anti-gratuity statute when it pays an informant before trial to collect information and does so when there is some expectation that the informant may later testify about what the informant discovered); *United States v. Pagan*, 196 F.3d 884 (7th Cir. 1999) (holding that permitting testimony by witness who had been paid for his work as government informant did not violate federal anti-bribery statute); *United States v. Albanese*, 195 F.3d 389 (8th Cir. 1999) (holding that federal bribery statute, forbidding an exchange of value for or because of testimony, was not violated when government granted prosecution witness leniency on criminal charges he faced and payments in excess of $60,000 for his cooperation in

investigating and prosecuting current case against defendant and other criminal activities, especially since other federal statutes authorized federal government to pay witnesses and to grant leniency for testifying, and fact that government granted witness leniency and paid him for his assistance was known to the jury and fully explored at trial).

Thus, it is clear from the foregoing legal authority that even if the government had made <u>direct cash payments</u> to Ms. McGolden and Ms. Hagerman in exchange for their testimony, there would be no violation of the Anti-Gratuity Statute. Likewise, the fact that the government has decided not to pursue restitution against these witnesses and this has "resulted in a financial gain" to them (Doc. 41) cannot violate the statute. Ms. Carter's counsel has not accused the government of attempting to "recompense any corruption of the truth of testimony," nor would he have grounds to do so. Thus, there is no basis for excluding the testimony of Ms. McGolden or Ms. Hagerman. As contemplated by the cases above, defense counsel is obviously aware of the fact the government is not pursuing restitution against these witnesses and can cross-examine them about it.

**III.   The Government's Decision Not To Pursue Restitution Against Ms. McGolden and Ms. Hagerman Is A Function Of The Crime and Conduct With Which They Were Charged.**

Ms. Carter claims that the government's decision not to pursue restitution against Ms. McGolden and Ms. Hagerman in connection with their guilty pleas was a form of leniency or benefit offered to them in exchange for their trial testimony against Ms. Carter and Ms. Kluding. However, the government's decision regarding restitution in

these cases is motivated simply by the law applicable to restitution and the unique facts of this case.  Ms. McGolden and Ms. Hagerman pled guilty to violating 42 U.S.C. § 1320a-7b(a)(2)(ii), specifically by falsifying documents on one particular day in 2011, when those documents were later submitted to Medicare by Ms. Kluding as supporting documentation for an audit that would determine Ms. Kluding's right to Medicare reimbursement for hospice services.  (*See* Document 1 in Case Numbers CR-14-134-C and CR-135-C).  Under 18 U.S.C. § 3663A, Ms. McGolden and Ms. Hagerman can only be ordered to pay restitution for their crimes of conviction.  *See Hughey v. United States*, 495 U.S. 411, 413 (1990) (holding that restitution awards are limited to "the loss caused by the specific conduct that is the basis of the offense of conviction").  *See also United States v. Cutter*, 313 F.3d 1, 9 (1st Cir. 2002) ("Section 3663A provides only for restitution for the benefit of the victims of the specific crimes of which a defendant is convicted, not for restitution on broad equitable principles for other misleading or even fraudulent conduct."); *United States v. Sharma*, 703 F.3d 318, 323-24 (5th Cir. 2012) (reversing restitution order for Medicare fraud conviction when amount included losses resulting from non-convicted fraud).

Because of the way that Medicare reimburses hospice providers – on a *per diem* rate that is not directly connected to the quantity or type of services provided, nor any particular documentation of such services – the connection between the conduct of conviction for Ms. McGolden or Ms. Hagerman and any loss to the victim, Medicare, is far too attenuated and negligible to attempt a reasonable restitution calculation.

Moreover, neither Ms. McGolden nor Ms. Hagerman received any direct financial gain or benefit from Medicare that can be attributable to their criminal conduct. Given these circumstances, the government has chosen not to pursue restitution. *See United States v. Speakman*, 594 F.3d 1165, 1171 (10th Cir. 2010) (recognizing that "courts have also focused on the need for the harm suffered by the alleged victim to be 'not too attenuated' from the defendant's wrongful act"); *United States v. Swor*, 728 F.3d 971, 974-75 (9th Cir. 2013) (holding that defendant's participation in original defrauding scheme was too attenuated to hold him liable for restitution resulting from second, subsequent scheme). Despite Ms. Carter's claims, the government's decision regarding restitution was not an attempt to convey an incentive or benefit on Ms. McGolden or Ms. Hagerman in exchange for their testimony.

## **CONCLUSION**

For the foregoing reasons, the government respectfully requests the Court to deny Ms. Carter's motion.

Respectfully submitted,

SANFORD C. COATS
United States Attorney

s/*Amanda L. Maxfield Green*
AMANDA MAXFIELD GREEN
JESSICA PERRY
Assistant U.S. Attorneys
Bar Number: 19876
Bar Number: 22681
210 Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102

>                               (405) 553-8770 (Office)
>                               (405) 553-8888 (Fax)
>                               Amanda.Green@usdoj.gov
>                               Jessica.Perry2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of October, 2014, I electronically transmitted the *GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR HEARING ON WHETHER TO PROHIBIT TESTIMONY FROM WITNESSES FROM WHOM RESTITUTION WAS NOT SOUGHT* to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Joseph L. Wells
Daniel White

>                               *s/ Amanda L. Maxfield Green*
>                               Assistant U.S. Attorney